IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*



| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:21-CR-260 |
| v. | Count One:   Conspiracy to Participate in a Racketeering Enterprise (18 U.S.C. § 1962(d)) |

Marvin Menjivar Gutiérrez,
    a/k/a "Astuto,"
    (Counts 1, 2)

Count Two:   Conspiracy to Distribute Cocaine (21 U.S.C. §§ 841(a) and 846)

Melvin Canales Saldana,
    a/k/a "Carlos Vigil Garay,"
    a/k/a "Carlos Bladimir,"
    a/k/a "Demente,"
    (Counts 1, 2, 10-12, 17, 18)

Counts Three, Ten, and Thirteen: Conspiracy to Commit Murder in Aid of Racketeering Activity (18 U.S.C. § 1959(a)(5))

Mario Antonio Guevara Rivera,
    a/k/a "Blue,"
    a/k/a "Azul,"
    a/k/a "Telele,"
    (Counts 1-8, 13-15, 19, 22, 23)

Counts Four, Six, Eleven, and Fourteen: Murder in Aid of Racketeering Activity (18 U.S.C. §§ 1959(a)(1) and 2)

Cristian Ariel Arevalo Arias,
    a/k/a "Serio,"
    (Counts 1-8, 18)

Counts Five, Seven, Twelve, and Fifteen: Use of a Firearm During a Crime of Violence Causing Death (18 U.S.C. §§ 924(c)(1)(A)(iii), (j)(1), and 2)

Carlos Jose Turcios Villatoro,
    a/k/a "Carlos Jose Turicios Villatoro,"
    a/k/a "Oculto,"
    (Counts 1-8)

Count Eight: Witness Tampering (18 U.S.C. §§ 1512(a)(1)(c) and 2)

Count Nine:   Accessory After the Fact to Murder in Aid of Racketeering Activity (18 U.S.C. § 3)

Abner Jose Molina Rodriguez,
    a/k/a "Rino,"
    a/k/a "Tecolote,"
    (Counts 1, 2, 13-15)

Counts Sixteen through Twenty-One: Distribution of Cocaine (21 U.S.C. § 841(a))

Manilester Andrade Rivas,
    a/k/a "Mani,"
    a/k/a "Tandori,"
    a/k/a "Conejo,"
    a/k/a "Coqueto,"
    (Counts 1, 2, 10-12, 16, 20, 21)

Count Twenty-Two: Possession with Intent to Distribute Cocaine (21 U.S.C. § 841(a))

Jairo Gustavo Aguilera Sagastizado,
    a/k/a "Coy,"
    a/k/a "Maruchan,"
    a/k/a "Psicólogo,"
    (Counts 1, 2, 13-15)

Walter Jeovanny Rubio Lemus,
    a/k/a "Caskillo,"
    (Counts 1, 2, 16)

Juan Carlos Hernández Landaverde,
    a/k/a "Chele,"
    (Count 19)

Karen Estefany Figueroa Alfaro,
    (Counts 2, 20, 21)

    and

Juan Manuel Vasquez Reyes,
    a/k/a "Güerro,"
    (Count 9)

            *Defendants.*

Count Twenty-Three: Possession of
a Firearm in Furtherance of a Drug
Trafficking Crime (18 U.S.C.
§ 924(c)(1)(A))

Notices of Special Findings (18 U.S.C.
§§ 3591 and 3592)

## SUPERSEDING INDICTMENT

January 2022 Term – at Alexandria

## Count One

*(Conspiracy to Participate in a Racketeering Enterprise)*

THE GRAND JURY CHARGES THAT:

At all times relevant to this Superseding Indictment:

## General Allegations

1.      *La Mara Salvatrucha*, also known as MS-13 ("MS-13"), was a gang composed

primarily of immigrants or descendants of immigrants from El Salvador, with members operating

in the Commonwealth of Virginia, including in Prince William County, Fairfax County, Alexandria, Richmond, and throughout the United States.

2.      In the United States, MS-13 has been functioning since at least the 1980s.   MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups.   MS-13 quickly spread to states across the country, including Virginia.

3.      MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States.   Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

4.      Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering.   Members also signified their membership through tattoos of devil horns in various places on their bodies.   Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying "*mi vida loca*," or clown faces with phrases such as "laugh now, cry later."   Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

5.      The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76."   MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez."   As with tattoos, some MS-13 members selected more discreet ways of dressing in order to signify their membership and at the same time avoid detection by law enforcement.

6.      MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

7.      Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons.   MS-13 members required that all individuals show respect and deference to the gang and its membership.   To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.

8.      Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, and drug trafficking, as well as attempts and conspiracies to commit such offenses.   MS-13 members and associates were required to commit acts of violence to maintain membership and discipline within the gang, as well as against rival gang members.   Participation in criminal activity by a member, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position.   One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible.   Rivals were often referred to as "*chavalas*."   MS-13, in the area of Prince William County, maintained rivalries with, among others, the 18th Street Gang.

9.      Prospective members who sought to join MS-13 were required to complete an initiation process.   Individuals who associated and committed crimes with the gang were called "*esquinas*," "*paros*," or "*observaciones*."   Individuals who were attempting to join the gang were called "*chequeos*," or "cheqs."   *Chequeos* underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the

gang.  To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang.  During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

10.     Within MS-13, the primary unit of organization was known as a "clique," that is, smaller groups operating in a specific city or region.  Cliques operated under the umbrella rules of MS-13.  MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.  In Virginia and the surrounding area, these cliques included, among others, the Sitios Locos Salvatrucha ("STLS" or "Sitios"), Pinos Locos Salvatrucha ("PLS" or "Pinos"), Herndon City Locos Salvatrucha ("HCLS"), Normandie Locos Salvatrucha ("NLS" or "Normandie"), Sailors Locos Salvatrucha Westside ("SLSW" or "Sailors"), Fulton Locos Salvatrucha ("FLS" or "Fulton"), Parkview Locos Salvatrucha ("PVLS"), Uniones Locos Salvatrucha ("ULS"), and Gangster Locos Salvatrucha ("GLS" or "Gangsters").

11.     The following defendants were members and associates of the STLS/Sitios clique of MS-13:

| Name | Gang Moniker(s) / Nickname(s) | Hereinafter |
| --- | --- | --- |
| Marvin Menjivar Gutiérrez | Astuto | "MENJIVAR" |
| Melvin Canales Saldana | Demente | "CANALES" |
| Mario Antonio Guevara Rivera | Blue, Azul, Telele | "GUEVARA" |
| Cristian Ariel Arevalo Arias | Serio | "AREVALO" |
| Carlos Jose Turcios Villatoro | Oculto | "TURCIOS" |

| Name | Gang Moniker(s) / Nickname(s) | Hereinafter |
|---|---|---|
| Abner Jose Molina Rodriguez | Rino, Tecolote | "MOLINA" |
| Manilester Andrade Rivas | Mani, Tandori, Conejo, Coqueto | "ANDRADE" |
| Jairo Gustavo Aguilera Sagastizado | Coy, Maruchan, Psicólogo | "AGUILERA" |
| Walter Jeovanny Rubio Lemus | Caskillo | "RUBIO" |
| Juan Carlos Hernández Landaverde | Chele | "HERNÁNDEZ" |

12.     Each clique was presided over by the "First Word," the leader or president of the clique. The leader was also sometimes referred to as "Primera Palabra" or "Corredor." The "Second Word," or "Segundo Palabra," was the second-in-command of the clique. General members were required to take orders from the First Word and Second Word.

13.     MS-13 cliques kept in contact and reported to the leaders for their respective cliques, who were oftentimes based in various states or in El Salvador. Cliques contacted their leaders based in other states or El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques. Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Virginia-based cliques through phones smuggled into Salvadoran prisons.

14.     MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence. Each clique held clique meetings where business specific to that clique was discussed. Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued. Violations often took the form of beatings by fellow MS-13 members. More serious violations resulted in the issuance of a "greenlight." A greenlight was an order and/or approval to kill.

6

15.     MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques.   Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

16.     MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses, as well as narcotics trafficking and the commission of robberies.   Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Virginia, and in El Salvador.

17.     MS-13 members communicated about gang activities with other MS-13 members in Virginia and elsewhere using mobile telephones, telephone text messages, social media such as Facebook and e-mail accounts, and other modes of communication.   Additionally, MS-13 members used national and international money wire transfers to conduct and promote gang activities.

The Racketeering Enterprise

18.     At all times relevant to this Superseding Indictment, MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. §§ 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the MS-13 Enterprise" or "the Enterprise").   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.   At all times

relevant to this Superseding Indictment, the Enterprise operated in the Eastern District of Virginia and elsewhere.

### Purposes of the Enterprise

19.     The purposes of the MS-13 Enterprise included, but were not limited to:

a.     Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

b.     Promoting and enhancing the enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, extortion, drug trafficking, robbery, and other criminal activities;

c.     Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

d.     Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated in the United States and in El Salvador;

e.     Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise; and

f.     Hindering, obstructing, and preventing law enforcement officers from identifying participants in the enterprise's criminal activity; from apprehending the perpetrators of those crimes; and from successfully prosecuting and punishing the offenders.

### Means and Methods of the Enterprise

20.     Among the means and methods by which the members and associates of the MS-13 Enterprise conducted and participated in the conduct of the affairs of the Enterprise were the following:

8

a.      The members and associates of MS-13 used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities, to promote and enhance its prestige, reputation, and position in the community, and to discipline gang members who had been disloyal or had violated gang rules;

b.      The members and associates of MS-13 acquired, possessed, shared, carried, and used deadly weapons, including firearms, to protect themselves, their narcotics, and proceeds derived from the sale of narcotics, and to harm and kill rivals;

c.      The members and associates of MS-13 attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 leaders, members, and associates who had been arrested or incarcerated; disciplining MS-13 leaders, members, and associates who had violated gang rules; police interactions with MS-13 leaders, members, and associates; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes;

d.      The members and associates of MS-13 also communicated with other MS-13 members in Virginia and elsewhere, and represented their gang allegiance, through social media such as Facebook, including by posting photographs of themselves with other gang members, showing gang hand signs, wearing colors or clothing associated with MS-13, and posing with weapons or gang-related graffiti, and by sending and/or posting messages referencing their affiliation with MS-13;

e.      The members and associates of MS-13 financed the enterprise through a variety of activities, including the extortion of money – sometimes referred to as "rent"

– from legitimate and illegitimate businesses operating on the gang's turf, as well as through the commission of robberies.

f.      The members and associates of MS-13 distributed and agreed to distribute or assist distribution of controlled substances on behalf of the gang;

g.      The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Virginia, and in El Salvador;

h.      The members and associates of MS-13 hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members;

i.      The members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets; and

j.      The members and associates of MS-13 would and did agree that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

The Racketeering Conspiracy

21.     Beginning on a date unknown, but at least in and around 2017, and continuing through at least in and around October 2020, in the Eastern District of Virginia, and elsewhere, the defendants,

**MARVIN MENJIVAR GUTIÉRREZ, a/k/a "Astuto,"**

**MELVIN CANALES SALDANA, a/k/a "Carlos Vigil Garay," a/k/a "Carlos Bladimir," a/k/a "Demente,"**

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro," a/k/a "Oculto,"**

**ABNER JOSE MOLINA RODRIGUEZ, a/k/a "Rino," a/k/a "Tecolote,"**

**MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"**

**JAIRO GUSTAVO AGUILERA SAGASTIZADO, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"**

and

**WALTER JEOVANNY RUBIO LEMUS, a/k/a "Caskillo,"**

being persons employed by and associated with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire and agree with each other, and with others known and unknown to the Grand Jury, to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of:

(a)   Multiple acts involving murder, chargeable under Virginia Code §§ 18.2-32, 18.2-26, 18.2-22, and 18.2-18; and

(b)   Multiple offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841 and 846.

22.   It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

Overt Acts

23.   In furtherance of the conspiracy, and to effect the object thereof, the defendants and others known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in the Eastern District of Virginia, and elsewhere:

**Drug Trafficking Activities**

a.   Beginning on a date unknown, but at least in and around 2017, and continuing through at least on or about October 8, 2020, defendants **MENJIVAR, a/k/a "Astuto," CANALES, a/k/a "Demente," GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele," AREVALO, a/k/a "Serio," TURCIOS, a/k/a "Oculto," MOLINA, a/k/a "Rino," a/k/a "Tecolote," ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto," AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** and **RUBIO, a/k/a "Caskillo,"** conspired and agreed with each other and with others known and unknown to the Grand Jury to distribute cocaine in the Eastern District of Virginia and elsewhere.

b.   Beginning on a date unknown, but since at least in and around 2017, and continuing through at least on or about October 8, 2020, MS-13 members and associates regularly travelled to and from Long Island, New York for the purpose of obtaining cocaine and transporting

12

it to the Washington, D.C. metropolitan area, where they and other MS-13 members and associates would sell it.

c.      On or about December 18, 2019, in Prince William County, Virginia, defendants **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and **RUBIO, a/k/a "Caskillo,"** distributed approximately 6.8 grams of cocaine.

d.      On or about January 14, 2020, in Prince William County, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** distributed approximately 2.3 grams of cocaine.

e.      On or about January 21, 2020, in Prince William County, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** distributed approximately 84.5 grams of cocaine.

f.      On or about January 30, 2020, in Prince William County, Virginia, defendant **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** distributed approximately 6.5 grams of cocaine.

g.      On or about February 13, 2020, in Loudoun County, Virginia, defendant **CANALES, a/k/a "Demente,"** distributed approximately 0.9 grams of cocaine.

h.      On or about February 15, 2020, in Prince William County, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** distributed approximately 111.6 grams of cocaine.

i.      On or about February 27, 2020, in Manassas, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** distributed approximately 2.2 grams of cocaine and sold two firearms with the drugs.

j.      On or about February 27, 2020, in Montgomery County, Maryland, defendant **CANALES, a/k/a "Demente,"** distributed approximately 20.3 grams of cocaine.

k.      On or about February 29, 2020, in Prince William County, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** distributed approximately 125.7 grams of cocaine.

l.      On or about March 10, 2020, in Prince William County, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** distributed approximately 139.4 grams of cocaine.

m.      On or about March 11, 2020, in Prince William County, Virginia, defendant **CANALES, a/k/a "Demente,"** distributed approximately 59.8 grams of cocaine.

n.      On or about April 9, 2020, in Prince William County, Virginia, defendants **CANALES, a/k/a "Demente,"** and **AREVALO, a/k/a "Serio,"** distributed approximately 20.5 grams of cocaine.

o.      On or about May 7, 2020, in Prince William County, Virginia, defendants **CANALES, a/k/a "Demente,"** and **AREVALO, a/k/a "Serio,"** distributed approximately 35.4 grams of cocaine.

p.      On or about May 14, 2020, in Prince William County, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** and HERNÁNDEZ, a/k/a "Chele," distributed approximately 56 grams of cocaine.

q.      On or about May 20, 2020, in Manassas, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** distributed approximately 2.4 grams of cocaine.

r.     On or about June 19, 2020, in Prince William County, Virginia, defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** and **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** distributed approximately 55.7 grams of cocaine.

s.     On or about June 25, 2020, in Prince William County, Virginia, defendant **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and Karen Estefany Figueroa Alfaro ("Figueroa") distributed approximately 7.4 grams of cocaine.

t.     On or about August 26, 2020, in Prince William County, Virginia, defendant **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and Figueroa distributed approximately 7.2 grams of cocaine.

u.     On or about September 8, 2020, in Prince William County, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** distributed approximately 2.1 grams of cocaine and sold a firearm with the drugs.

v.     On or about October 8, 2020, in Prince William County, Virginia, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** possessed with the intent to distribute approximately 70 grams of cocaine, a digital scale, packaging materials, drug owe sheets, and a firearm.

### June 2019 Murder of M.B.L. and J.G.M.

w.     In and around June 2019, members and associates of MS-13 conspired to murder a suspected member or associate of a rival gang, identified for the purposes of this Superseding Indictment as M.B.L.

x.     On or about June 22, 2019, defendant **AREVALO, a/k/a "Serio,"** lured M.B.L. and M.B.L.'s friend, J.G.M., to a wooded area behind the 7 Market on Featherstone Road in Woodbridge, Virginia under the guise of a drug transaction.

15

y.      On or about June 22, 2019, in Prince William County, Virginia, members and associates of MS-13, including defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,", AREVALO, a/k/a "Serio,"** and **TURCIOS, a/k/a "Oculto,"** murdered M.B.L. and J.G.M. by shooting both M.B.L. and J.G.M. and by stabbing M.B.L.

z.      On or about June 22, 2019, after murdering M.B.L. and J.G.M., defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele," AREVALO, a/k/a "Serio,"** and **TURCIOS, a/k/a "Oculto,"** met defendant **GUEVARA's** girlfriend and a person known to the Grand Jury at Cloverdale Park in the Dale City area of Prince William County.   Defendant **GUEVARA's** girlfriend drove defendants **GUEVARA, AREVALO**, and **TURCIOS** out of the area, while the person known to the Grand Jury drove the vehicle in which defendants **GUEVARA, AREVALO**, and **TURCIOS** had fled the scene of the murders out of the area.

aa.     On or about June 22, 2019, defendant **CANALES, a/k/a "Demente,"** using coded language, messaged defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** via WhatsApp and told defendant **GUEVARA** to send him the news about the murder and to get rid of unspecified items.

bb.     On or about June 22, 2019, defendant **MENJIVAR, a/k/a "Astuto,"** messaged defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** via WhatsApp and told defendant **GUEVARA** to send him a report about the murder.

cc.     Between on or about June 22, 2019 and June 24, 2019, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** sent defendant **MENJIVAR, a/k/a "Astuto,"** multiple draft reports stating in coded language that defendants **GUEVARA, AREVALO, a/k/a "Serio,"** and **TURCIOS, a/k/a "Oculto,"** had murdered two *chavalas*.

16

dd. On or about June 24, 2019, defendant **AREVALO, a/k/a "Serio,"** confirmed the accuracy of one of the draft reports before defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** sent it to defendant **MENJIVAR, a/k/a "Astuto."**

ee. On or about June 24, 2019, defendant **MENJIVAR, a/k/a "Astuto,"** told defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** to make various edits to the draft report, including the addition of the fact that defendants **GUEVARA**, **AREVALO, a/k/a "Serio,"** and **TURCIOS, a/k/a "Oculto,"** had each risen to the rank of *chequeo*.

ff. On or about June 24, 2019, defendant **MENJIVAR, a/k/a "Astuto,"** told defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** to send the approved report to defendant **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** so that defendant **ANDRADE** could record it in a notebook.

gg. On or about June 24, 2019, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** sent the report to defendant **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and told him that defendant **MENJIVAR, a/k/a "Astuto,"** had already approved it.

hh. On or about June 24, 2019, defendant **MENJIVAR, a/k/a "Astuto,"** told defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** to burn the clothing defendants **GUEVARA, AREVALO, a/k/a "Serio,"** and **TURCIOS, a/k/a "Oculto,"** had worn during the murders, to stay alert and pay attention to the news, and to destroy the firearm they had used to commit the murders.

ii. On or about June 24, 2019, defendant **MENJIVAR, a/k/a "Astuto,"** advised defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** that defendant **MENJIVAR** would decide if defendants **GUEVARA**, **AREVALO, a/k/a "Serio,"** and

17

**TURCIOS, a/k/a "Oculto,"** were going to be credited with two murders and receive a promotion in rank within the gang.

       jj.    On or about June 24, 2019, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** burned the clothing that he and defendants **AREVALO, a/k/a "Serio,"** and **TURCIOS, a/k/a "Oculto,"** had worn during the murders in a fire pit at the residence he shared with his girlfriend.

       kk.    On or about June 27, 2019, Juan Manuel Vasquez Reyes, a/k/a "Güerro," brought defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** the firearm used to murder M.B.L. and J.G.M., which defendant **GUEVARA** had hidden in a paint can at a worksite, along with a cutting tool to destroy the firearm.

       ll.    On or about June 29, 2019, defendant **MENJIVAR, a/k/a "Astuto,"** told defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** that defendant **GUEVARA** would be beaten if he did not destroy the firearm.

       mm.    On or about June 29, 2019, defendant **MENJIVAR, a/k/a "Astuto,"** told defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** that he needed defendant **GUEVARA** to put pressure on people to obtain more firearms.

       nn.    On or about June 29, 2019, defendant **MENJIVAR, a/k/a "Astuto,"** told defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** that he needed defendant **GUEVARA** to commit another murder within the next three months and that he wanted defendants **GUEVARA**, **ANDRADE**, and **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** to rise in rank and all be promoted at the same time.

       oo.    On or about June 29, 2019, defendant **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** told defendant **MENJIVAR, a/k/a "Astuto,"** that there were plenty of

available victims in the area for when defendant **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** who resided in New York, came to the Virginia area.

### August 2019 Murder of E.L.T.

pp.      In and around August 2019, members and associates of MS-13 conspired to commit a murder.

qq.      On or about August 29, 2019, defendant **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and other MS-13 members and associates known and unknown to the Grand Jury, armed themselves with firearms and knives and sought out an individual to murder so that they could maintain and increase their positions within MS-13.

rr.      On or about August 29, 2019, in Prince William County, Virginia, members and associates of MS-13, including defendant **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and other MS-13 members and associates known and unknown to the Grand Jury, encountered E.L.T. in the vicinity of an apartment complex on Bel Air Road in Woodbridge and murdered E.L.T., by shooting him.

ss.      On or about August 29, 2019, in the hours after E.L.T. was murdered, defendant **MENJIVAR, a/k/a "Astuto,"** messaged defendant **CANALES, a/k/a "Demente,"** via WhatsApp and, using coded language, asked defendant **CANALES** if STLS members and associates had committed a murder.   Defendant **CANALES** responded in the affirmative and told defendant **MENJIVAR** words to the effect of "people know when defendant **CANALES** sends them on a mission."

tt.      On or about August 31, 2019, defendants **CANALES, a/k/a "Demente," GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele," AREVALO, a/k/a "Serio," TURCIOS, a/k/a "Oculto," MOLINA, a/k/a "Rino," a/k/a "Tecolote," ANDRADE, a/k/a**

**"Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"**, **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo," RUBIO, a/k/a "Caskillo," HERNÁNDEZ, a/k/a "Chele,"** and other members and associates of MS-13, gathered at a park in Prince William County, Virginia to celebrate the addition of new *chequeos* to STLS.

### September 2019 Murder of A.K.S.

uu.     In and around September 2019, members and associates of MS-13 conspired to commit a murder.

vv.     On or about September 24, 2019, defendant **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** travelled to the residence of defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** and **MOLINA, a/k/a "Rino," a/k/a "Tecolote,"** in Woodbridge, Virginia and picked them up in his vehicle.

ww.     On or about September 24, 2019, defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**, **MOLINA, a/k/a "Rino," a/k/a "Tecolote,"** and **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** drove around Maryland and Northern Virginia looking for *chavalas* to murder.

xx.     On or about September 24, 2019 in Prince William County, Virginia, defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,", MOLINA, a/k/a "Rino," a/k/a "Tecolote,"** and **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** encountered A.K.S. in the vicinity of an apartment complex on Chesapeake Drive in Dumfries and murdered A.K.S. by shooting him.

yy.     On or about September 24, 2019, after murdering A.K.S., defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**, **MOLINA, a/k/a "Rino," a/k/a "Tecolote,"** and **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** fled to

Fredericksburg, Virginia, where they obtained new clothing from a Walmart and stayed in a Motel 6.

zz.     On or about September 25, 2019, defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele," MOLINA, a/k/a "Rino," a/k/a "Tecolote,"** and **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** drove to New York and remained there for several days.

Special Sentencing Factors as to Count One

24.     On or about June 22, 2019, in the Eastern District of Virginia, defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele," AREVALO, a/k/a "Serio,"** and **TURCIOS, a/k/a "Oculto,"** while aiding and abetting each other, did willfully, deliberately, maliciously, and with premeditation kill M.B.L., in violation of Virginia Code §§ 18.2-32 and 18.2-18.

25.     On or about June 22, 2019, in the Eastern District of Virginia, defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele," AREVALO, a/k/a "Serio,"** and **TURCIOS, a/k/a "Oculto,"** while aiding and abetting each other, did willfully, deliberately, maliciously, and with premeditation kill J.G.M., in violation of Virginia Code §§ 18.2-32 and 18.2-18.

26.     On or about August 29, 2019, in the Eastern District of Virginia, defendants **CANALES, a/k/a "Demente,"** and **ANDRADE, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and others known and unknown to the Grand Jury, while aiding and abetting each other, did willfully, deliberately, maliciously, and with premeditation kill E.L.T., in violation of Virginia Code §§ 18.2-32 and 18.2-18.

21

27.    On or about September 24, 2019, in the Eastern District of Virginia, defendants **GUEVARA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele," MOLINA, a/k/a "Rino," a/k/a "Tecolote,"** and **AGUILERA, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"** while aiding and abetting each other, did willfully, deliberately, maliciously, and with premeditation kill A.K.S., in violation of Virginia Code §§ 18.2-32 and 18.2-18.

(In violation of Title 18, United States Code, Section 1962(d).)

Count Two

*(Conspiracy to Distribute Cocaine)*

THE GRAND JURY FURTHER CHARGES THAT:

Beginning on a date unknown, but since at least in and around 2017, and continuing

through at least on or about October 8, 2020, in Prince William County, Virginia, within the

Eastern District of Virginia, and elsewhere, the defendants,

**MARVIN MENJIVAR GUTIÉRREZ, a/k/a "Astuto,"**

**MELVIN CANALES SALDANA, a/k/a "Carlos Vigil Garay," a/k/a "Carlos Bladimir,"
a/k/a "Demente,"**

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro,"
a/k/a "Oculto,"**

**ABNER JOSE MOLINA RODRIGUEZ, a/k/a "Rino," a/k/a "Tecolote,"**

**MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo,"
a/k/a "Coqueto,"**

**JAIRO GUSTAVO AGUILERA SAGASTIZADO, a/k/a "Coy," a/k/a "Maruchan,"
a/k/a "Psicólogo,"**

**WALTER JEOVANNY RUBIO LEMUS, a/k/a "Caskillo,"**

and

**KAREN ESTEFANY FIGUEROA ALFARO,**

did combine, conspire, confederate, and agree with each other, and with others known and

unknown to the Grand Jury, to unlawfully, knowingly, and intentionally distribute five hundred

(500) grams or more of a mixture and substance containing a detectable amount of cocaine, a

Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Ways, Manner, and Means to Accomplish the Conspiracy

The primary purpose of the conspiracy was to make money for MS-13 through the distribution of cocaine in the Eastern District of Virginia and elsewhere.   The ways, manner, and means by which this purpose was carried out included the following:

1.      It was part of the conspiracy that a member of the conspiracy would supply co-conspirators with cocaine in advance of payment, or "fronted" it to them, with payment being due after the cocaine had been sold.

2.      It was further part of the conspiracy that members of the conspiracy would transport cocaine from New York to the Washington, D.C. metropolitan area.

3.      It was further part of the conspiracy that members of the conspiracy would distribute cocaine in exchange for money primarily, though not exclusively, in restaurants and night clubs.

4.      It was further part of the conspiracy that members of the conspiracy would keep track of the amount of money owed by MS-13 members and associates for the drugs they would obtain each month in ledgers and written accountings that would be transmitted to STLS leadership.

5.      It was further part of the conspiracy that members of the conspiracy would use telephones to facilitate their drug trafficking activities.

6.      It was further part of the conspiracy that members of the conspiracy would use money transfer services to facilitate their drug trafficking activities.

7.       It was further part of the conspiracy that members of the conspiracy would use various methods to conceal the conspiracy and their unlawful drug distribution activities in order to ensure the continuing existence and success of the conspiracy.

Overt Acts

In furtherance of the conspiracy, and to effect the object thereof, the defendants and others known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in the Eastern District of Virginia, and elsewhere:

1.      As overt acts of this conspiracy, the Grand Jury hereby incorporates the allegations set forth in paragraphs 23(a) through 23(v) of Count One as if re-alleged and incorporated by reference as though fully set forth herein, along with other acts committed in furtherance of the conspiracy.

(All in violation of Title 21, United States Code, Section 846.)

Count Three

*(Conspiracy to Commit Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.      At all times relevant to this Superseding Indictment, MS-13, as more fully described in Paragraphs One through Twenty of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.    The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.      At all times relevant to this Superseding Indictment, the above-described MS-13 enterprise, including its leaders, members, and associates, engaged in racketeering activity, as defined in Title18, United States Code, Sections 1959(b)(1) and 1961(1), namely, (1) acts involving murder, chargeable under Virginia Code §§ 18.2-32, 18.2-26, 18.2-22, and 18.2-18, and (2) offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846.

3.      In and around June 2019, within the Eastern District of Virginia, and elsewhere, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

and

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro," a/k/a "Oculto,"**

26

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to murder M.B.L., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

Count Four

*(Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs One and Two of Count Three of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about June 22, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

and

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro,"**
**a/k/a "Oculto,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did murder M.B.L., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

Count Five

*(Using, Carrying, Brandishing, and Discharging a Firearm During a Crime of Violence
Causing Death)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 22, 2019, in Prince William County, Virginia, within the Eastern District

of Virginia, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

and

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro,"
a/k/a "Oculto,"**

did knowingly and intentionally use, carry, brandish, and discharge a firearm during and in relation

to a crime of violence for which they may be prosecuted in a court of the United States, namely,

the murder of M.B.L. in aid of racketeering activity, in violation of Title 18, United States Code,

Section 1959(a)(1), as set forth and charged in Count Four of this Superseding Indictment, and in

the course of committing said offense, did cause the death of M.B.L. through the use of a firearm,

which killing was murder, as defined in 18 U.S.C. § 1111, and did aid, abet, counsel, command,

induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and (j)(1) and 2.)

29

Count Six

*(Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs One and Two of Count Three of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about June 22, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

and

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro,"
a/k/a "Oculto,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did murder J.G.M., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

Count Seven

*(Using, Carrying, Brandishing, and Discharging a Firearm During a Crime of Violence Causing Death)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 22, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

and

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro," a/k/a "Oculto,"**

did knowingly and intentionally use, carry, brandish, and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the murder of J.G.M. in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1), as set forth and charged in Count Six of this Superseding Indictment, and in the course of committing said offense, did cause the death of J.G.M. through the use of a firearm, which killing was murder, as defined in 18 U.S.C. § 1111, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and (j)(1) and 2.)

31

Count Eight

*(Tampering with a Witness by Killing)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 22, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

and

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro," a/k/a "Oculto,"**

did kill J.G.M. by shooting him, with the intent to prevent the communication by J.G.M. to a law enforcement officer of the defendants' involvement in the murder of M.B.L. in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1), as set forth and charged in Count Four of this Superseding Indictment, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1512(a)(1)(C) and 2.)

## Count Nine

*(Accessory After the Fact to Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 27, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendant, **JUAN MANUEL VASQUEZ REYES, a/k/a "Güerro,"** knowing that offenses against the United States had been committed, to wit: the murders in aid of racketeering of M.B.L. and J.G.M. on or about June 22, 2019, in violation of 18 U.S.C. § 1959(a)(1), as set forth and charged in Counts Four and Six of this Superseding Indictment, and the discharge of a firearm during and in relation to these crimes of violence causing death on or about June 22, 2019, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j)(1), as set forth and charged in Counts Five and Seven of this Superseding Indictment, did knowingly receive, relieve, comfort, and assist the offenders in order to hinder and prevent their apprehension, trial, and punishment, namely, defendant **VASQUEZ** provided a tool to one or more of the offenders to destroy the firearm used in the murders of M.B.L. and J.G.M.

(In violation of Title 18, United States Code, Section 3.)

Count Ten

*(Conspiracy to Commit Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs One and Two of Count Three of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      In and around August 2019, within the Eastern District of Virginia, and elsewhere, the defendants,

**MELVIN CANALES SALDANA, a/k/a "Carlos Vigil Garay," a/k/a "Carlos Bladimir," a/k/a "Demente,"**

and

**MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to murder E.L.T., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

Count Eleven

*(Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.      Paragraphs One and Two of Count Three of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about August 29, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendants,

**MELVIN CANALES SALDANA, a/k/a "Carlos Vigil Garay," a/k/a "Carlos Bladimir," a/k/a "Demente,"**

and

**MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"**

together with others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did murder E.L.T., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

Count Twelve

*(Using, Carrying, Brandishing, and Discharging a Firearm During a Crime of Violence Causing Death)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about August 29, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendants,

**MELVIN CANALES SALDANA, a/k/a "Carlos Vigil Garay," a/k/a "Carlos Bladimir," a/k/a "Demente,"**

and

**MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"**

together with others known to the Grand Jury, did knowingly and intentionally use, carry, brandish, and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the murder of E.L.T. in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1), as set forth and charged in Count Eleven of this Superseding Indictment, and in the course of committing said offense, did cause the death of E.L.T. through the use of a firearm, which killing was murder, as defined in 18 U.S.C. § 1111, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and (j)(1) and 2.)

Count Thirteen

*(Conspiracy to Commit Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.     Paragraphs One and Two of Count Three of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     In and around September 2019, within the Eastern District of Virginia, and elsewhere, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**ABNER JOSE MOLINA RODRIGUEZ, a/k/a "Rino," a/k/a "Tecolote,"**

and

**JAIRO GUSTAVO AGUILERA SAGASTIZADO, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to murder A.K.S., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

Count Fourteen

*(Murder in Aid of Racketeering Activity)*

THE GRAND JURY FURTHER CHARGES THAT:

1.     Paragraphs One and Two of Count Three of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about September 24, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**ABNER JOSE MOLINA RODRIGUEZ, a/k/a "Rino," a/k/a "Tecolote,"**

and

**JAIRO GUSTAVO AGUILERA SAGASTIZADO, a/k/a "Coy," a/k/a "Maruchan,"
a/k/a "Psicólogo,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did murder A.K.S., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

Count Fifteen

*(Using, Carrying, Brandishing, and Discharging a Firearm During a Crime of Violence Causing Death)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 24, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, the defendants,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**ABNER JOSE MOLINA RODRIGUEZ, a/k/a "Rino," a/k/a "Tecolote,"**

and

**JAIRO GUSTAVO AGUILERA SAGASTIZADO, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"**

did knowingly and intentionally use, carry, brandish, and discharge a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the murder of A.K.S. in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1), as set forth and charged in Count Fourteen of this Superseding Indictment, and in the course of committing said offense, did cause the death of A.K.S. through the use of a firearm, which killing was murder, as defined in 18 U.S.C. § 1111, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and (j)(1) and 2.)

## Count Sixteen

### (*Distribution of Cocaine*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 18, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, defendants **MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and **WALTER JEOVANNY RUBIO LEMUS, a/k/a "Caskillo,"** did knowingly, intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## Count Seventeen

*(Distribution of Cocaine)*

THE GRAND JURY FURTHER CHARGES THAT:

On or about March 11, 2020, in Prince William County, Virginia, within the Eastern District of Virginia, defendant **MELVIN CANALES SALDANA, a/k/a "Carlos Vigil Garay," a/k/a "Carlos Bladimir," a/k/a "Demente,"** did knowingly, intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 841(a)(1).)

Count Eighteen

(*Distribution of Cocaine*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 7, 2020, in Prince William County, Virginia, within the Eastern District of Virginia, defendants **MELVIN CANALES SALDANA, a/k/a "Carlos Vigil Garay," a/k/a "Carlos Bladimir," a/k/a "Demente,"** and **CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"** did knowingly, intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

Count Nineteen

(*Distribution of Cocaine*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 14, 2020, in Prince William County, Virginia, within the Eastern District of Virginia, defendants **MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"** and **JUAN CARLOS HERNÁNDEZ LANDAVERDE, a/k/a "Chele,"** did knowingly, intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

Count Twenty

(*Distribution of Cocaine*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 25, 2020, in Prince William County, Virginia, within the Eastern District of Virginia, defendants **MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and **KAREN ESTEFANY FIGUEROA ALFARO** did knowingly, intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

44

Count Twenty-One

(*Distribution of Cocaine*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about August 26, 2020, in Prince William County, Virginia, within the Eastern District of Virginia, defendants **MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"** and **KAREN ESTEFANY FIGUEROA ALFARO** did knowingly, intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

Count Twenty-Two

(*Possession of Cocaine with Intent to Distribute*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 8, 2020, in Prince William County, Virginia, within the Eastern District of Virginia, the defendant, **MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele**," did knowingly, intentionally, and unlawfully possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 841(a)(1).)

Count Twenty-Three

(*Possession of a Firearm in Furtherance of a Drug Trafficking Crime*)

THE GRAND JURY FURTHER CHARGES THAT:

On or about October 8, 2020, in Prince William County, Virginia, within the Eastern District of Virginia, the defendant, **MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele**," did knowingly possess a firearm, specifically, a Sig Sauer, model P226, 9 mm semi-automatic handgun, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, Possession with Intent to Distribution Cocaine, in violation of Title 21, United States Code, Section 841(a)(1), as set forth and charged in Count Twenty-Two of this Indictment.

(In violation of Title 18, United States Code, Section 924(c)(1)(A).)

**NOTICE OF SPECIAL FINDINGS CONCERNING SENTENCING ALLEGATIONS AS TO COUNTS FOUR AND FIVE**

**18 U.S.C. §§ 1959(a)(1) and 924(j)(1)**

THE GRAND JURY FURTHER FINDS:

As to Counts Four and Five of the Superseding Indictment, the allegations of which are hereby re-alleged as if set forth herein and incorporated by reference,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

and

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Carlos Jose Turicios Villatoro," a/k/a "Oculto,"**

the defendants:

      a.     were more than 18 years old at the time of the offense (Title 18, United States Code, Section 3591(a));

      b.     intentionally killed M.B.L. (Title 18, United States Code, Section 3591(a)(2)(A));

      c.     intentionally inflicted serious bodily injury that resulted in the death of M.B.L. (Title 18, United States Code, Section 3591(a)(2)(B));

      d.     intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and M.B.L. died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

      e.     intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that

participation in the act constituted a reckless disregard for human life and M.B.L. died as a result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

      f.     committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture and serious physical abuse to the victim (Title 18, United States Code, Section 3592(c)(6));

      g.     committed the offense after substantial planning and premeditation to cause the death of M.B.L. (Title 18, United States Code, Section 3592(c)(9)); and

      h.     intentionally killed and attempted to kill more than one person in a single criminal episode (Title 18, United States Code, Section 3592(c)(16)).

## NOTICE OF SPECIAL FINDINGS CONCERNING SENTENCING ALLEGATIONS AS TO COUNTS SIX, SEVEN, AND EIGHT

### 18 U.S.C. §§ 1959(a)(1), 924(j)(1), and 1512

THE GRAND JURY FURTHER FINDS:

As to Counts Six, Seven, and Eight of the Superseding Indictment, the allegations of which are hereby re-alleged as if set forth herein and incorporated by reference,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**CRISTIAN ARIEL AREVALO ARIAS, a/k/a "Serio,"**

and

**CARLOS JOSE TURCIOS VILLATORO, a/k/a "Oculto,"**

the defendants:

    a.  were more than 18 years old at the time of the offense (Title 18, United States Code, Section 3591(a));

    b.     intentionally killed J.G.M. (Title 18, United States Code, Section 3591(a)(2)(A));

    c.     intentionally inflicted serious bodily injury that resulted in the death of J.G.M. (Title 18, United States Code, Section 3591(a)(2)(B));

    d.     intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and J.G.M. died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

    e.     intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and J.G.M. died as a result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

f.    committed the offense after substantial planning and premeditation to cause the death of J.G.M. (Title 18, United States Code, Section 3592(c)(9)); and

g.    intentionally killed and attempted to kill more than one person in a single criminal episode (Title 18, United States Code, Section 3592(c)(16)).

### NOTICE OF SPECIAL FINDINGS CONCERNING SENTENCING ALLEGATIONS AS TO COUNTS ELEVEN AND TWELVE

### 18 U.S.C. §§ 1959(a)(1) and 924(j)(1)

THE GRAND JURY FURTHER FINDS:

As to Counts Eleven and Twelve of the Superseding Indictment, the allegations of which are hereby re-alleged as if set forth herein and incorporated by reference,

**MELVIN CANALES SALDANA, a/k/a "Carlos Vigil Garay," a/k/a "Carlos Bladimir," a/k/a "Demente,"**

and

**MANILESTER ANDRADE RIVAS, a/k/a "Mani," a/k/a "Tandori," a/k/a "Conejo," a/k/a "Coqueto,"**

the defendants:

    a.   were more than 18 years old at the time of the offense (Title 18, United States Code, Section 3591(a));

    b.     intentionally killed E.L.T. (Title 18, United States Code, Section 3591(a)(2)(A));

    c.     intentionally inflicted serious bodily injury that resulted in the death of E.L.T. (Title 18, United States Code, Section 3591(a)(2)(B));

    d.     intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and E.L.T. died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

    e.     intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and E.L.T. died as a result of the act (Title 18, United States Code, Section 3591(a)(2)(D)); and

      f.      committed the offense after substantial planning and premeditation to cause the death of E.L.T. (Title 18, United States Code, Section 3592(c)(9)).

## NOTICE OF SPECIAL FINDINGS CONCERNING SENTENCING ALLEGATIONS AS TO COUNTS FOURTEEN AND FIFTEEN

### 18 U.S.C. §§ 1959(a)(1) and 924(j)(1)

THE GRAND JURY FURTHER FINDS:

As to Counts Fourteen and Fifteen of the Superseding Indictment, the allegations of which are hereby re-alleged as if set forth herein and incorporated by reference,

**MARIO ANTONIO GUEVARA RIVERA, a/k/a "Blue," a/k/a "Azul," a/k/a "Telele,"**

**ABNER JOSE MOLINA RODRIGUEZ, a/k/a "Rino," a/k/a "Tecolote,"**

and

**JAIRO GUSTAVO AGUILERA SAGASTIZADO, a/k/a "Coy," a/k/a "Maruchan," a/k/a "Psicólogo,"**

the defendants:

a.   were more than 18 years old at the time of the offense (Title 18, United States Code, Section 3591(a));

b.      intentionally killed A.K.S. (Title 18, United States Code, Section 3591(a)(2)(A));

c.      intentionally inflicted serious bodily injury that resulted in the death of A.K.S. (Title 18, United States Code, Section 3591(a)(2)(B));

d.      intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and A.K.S. died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(C));

e.      intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that

participation in the act constituted a reckless disregard for human life and A.K.S. died as a result of the act (Title 18, United States Code, Section 3591(a)(2)(D)); and

      f.     committed the offense after substantial planning and premeditation to cause the death of A.K.S. (Title 18, United States Code, Section 3592(c)(9)).

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

FOREPERSON

Jessica D. Aber,
United States Attorney

By: _____
John C. Blanchard
Assistant United States Attorney

Rachel M. Roberts
Special Assistant United States Attorney

Matthew K. Hoff
Department of Justice Trial Attorney