**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:21cr260-6 (LMB) |
| | ) | |
| CARLOS JOSE TURCIOS VILLATORO, | ) | |
| | ) | |
| *Defendant.* | ) | |

### Defendant Villatoro's Motion to Suppress T-Mobile Evidence

Mr. Villatoro, by and through counsel, asks that the Court suppress any evidence from the trial of this matter obtained pursuant to the unlawful warrant requiring the production of phone records and cell tower site information directed to T-Mobile, and requested by state authorities in Prince William County in 2019. A warrant for T-Mobile phone records associated with Mr. Villatoro was obtained on or about September 10, 2019. *See* 9/10/19 Search Warrant, attached as Exhibit A. The affidavit in support of the search warrant failed to set forth facts sufficient to establish probable cause that Mr. Villatoro had committed an offense, and further failed to draw any connection between any alleged offense Mr. Villatoro had committed and the records that were requested. Any suggestion that the good faith exception would salvage the deficient warrant is without merit because the warrant was a bare bones affidavit; therefore, the good faith exception cannot not apply in this case.

The search warrant executed was nothing more than a fishing expedition by the Prince William County authorities to attempt to uncover evidence of unlawful activity, when no such evidence existed at the time the search warrant was obtained.

1

## I.       Introduction

Through their application for a search warrant, the Prince William County authorities made a specific request for historical cell tower information connected to Mr. Villatoro's phones. Under the facts and circumstances presented here, the affidavit in support of the search warrant failed to present evidence sufficient to demonstrate that Mr. Villatoro had engaged in any unlawful conduct or that evidence of unlawful conduct would be found in his phone records; the government cannot establish that there was probable cause supporting the issuance of the warrant. Consequently, the evidence obtained pursuant to the warrant was secured in violation of Mr. Villatoro's Fourth Amendment rights under the United States Constitution and must be suppressed.

Not only did the records requested reveal the cell phone calls and text messages made and received, the numbers to which and from which the calls and texts were made and received, the duration of the calls, and the times the calls were made and received, but they also requested and revealed the tracking location of Mr. Villatoro's phones when the listed calls and texts were made and received. Such requests for historical cell site information made in the absence of probable cause are prohibited under *Carpenter v. United States*, 138 S.Ct. 2206 (2018).

Mr. Villatoro asks that the records obtained by the Prince William County authorities be suppressed from introduction at the trial of this case, and any fruits of the evidence also be suppressed.

## II.        The T-Mobile Search Warrant

The T-Mobile phone records at issue were requested by the government pursuant to a

search warrant executed on September 10, 2019. *See* Ex. A. This search warrant included an

affidavit setting forth the specific allegations at issue and the evidence in support of those

allegations. In this affidavit, the officer requesting the warrant, Detective D.R. Cupka of the

Prince William County Police Department, discussed the murders of Milton Effrain Beltran

Lopez and Jairo Geremeas Mayorga on June 22, 2019, but did not implicate Mr. Villatoro as

committing the murders or as being complicit in the murders. Ex. A at *1-*6. Under the affidavit

in support of the search warrant, the following information was provided relevant to Mr.

Villatoro who, according to the government, had been attributed the nickname, "Oculto:"

> Criminal actions reported by several monikers were matched to the
> monikers and/or code names in the cellular device. Cellular number 240-
> 241-2996 was paired with "Serio" aka S1, while numbers 202-517-4250
> and 302-988-4283 were attached to "Oculto" aka O1. Both of these
> individuals were given "missions" to commit violent acts and other orders
> that must have been completed prior to August 30, 2019. Your affiant
> learned that the leaders of this clique arrived in Prince William County the
> weekend of August 30, 2019 to receive reports regarding these missions.

Ex. A at *4. These monikers and criminal actions were alleged in the affidavit to have been listed

in an "MS-13 cliq ledger" found by law enforcement, or were detailed in text messages

recovered from a cellular device used by a "ranking member" of MS-13. *Id*. The affidavit also

discussed the rules of criminal street gangs and MS-13 generally and included references to

violent acts to include "destruction of property, assault and battery, robbery, malicious

wounding, prostitution, human trafficking, commercial sex trafficking, child pornography,

extortion, drug offenses and homicides." Ex. A at *5.

The affidavit further alleged that "Historical information of cellular numbers 240-241-2996, 202-517-4250 and 302-988-4283 which are being used by ranking MS-13 members and associates will contain cell phone data of made and received calls and will show previous locations that the cell phone has been. These cell phone records can often provide the past location of the cell phone with an estimates distance from cell towers. This information may also be useful in identifying the past and present locations of these ranking MS-13 members and associates." Ex. A at *5. No other information was provided in the affidavit specifically about Mr. Villatoro or any criminal activity committed by Mr. Villatoro or alleged to have been planned by him.

The affidavit in support of the search warrant also indicated that the records requested "include historical information [that] will provide a multitude of information pertinent to this investigation." *Id*. This also incorporates "past location of the cell phone with an estimated distance from cell towers." *Id*. The warrant/affidavit requests "tower and cell site information" related to Mr. Villatoro's phone numbers. *Id*. at *6.

### III.    The Law Pertaining to Records Obtained from T-Mobile

The standard governing the resolution of this motion begins with the moving party bearing the burden of proving that suppression is proper. *United States v. Simmons*, 107 F. Supp. 2d 703, 705 (E.D. Va. 2000). "Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence." *United States v. Gualtero*, 62 F. Supp. 3d 479,482 (E.D. Va. 2014). The moving party's burden is proof by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974). "In the course of deciding a motion to suppress, the district court may make findings of

fact, as well as rulings of law." *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005).

In applying this standard, the Court is governed by the constitutional requirement that the Fourth Amendment generally requires police to secure a warrant before conducting a search. *United States v. Banks*, 482 F.3d 733, 738 (4th Cir. 2007) (quoting *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). Warrants must be supported by probable cause, which "'exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found' in the place to be searched." *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Evidence seized pursuant to an invalid warrant is subject to suppression under the exclusionary rule.

The Fourth Amendment, which protects individuals from "unreasonable searches," provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Fourth Amendment requires that warrants: (1) be issued by a neutral, detached magistrate, (2) contain a particularized description of the place to be searched and persons or things to be seized, and (3) be based on probable cause, supported by oath or affirmation. *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994). A magistrate judge must examine the totality of the circumstances to determine whether probable cause exists, and whether a warrant should be issued. *Id*. Probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). "In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it

is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993).

To support a finding of probable case, "[t]here must . . . be a *nexus* between the place to be searched and the evidence sought." *United States v. Carpenter* , 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (emphasis added and internal quotation marks omitted). Warrants must not only be supported by probable cause, but must particularly describe the evidence for which probable cause exists. *See* U.S. CONST. Amend. IV. "The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Berry* , 565 F.3d 332, 338 (6th Cir. 2009). *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016). Evidence seized pursuant to an invalid warrant is subject to suppression under the exclusionary rule. "The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010).

The Court limits its inquiry to whether the warrant contained a "substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). 462 U.S. at 239. In this situation involving historical cell tower information, the request for cell tower site information records allowed the officers to obtain all historical records of phone calls – to include text messages, data searches, and cell phone location – all activities conducted on the phone. The Court in *Carpenter* explained why the information obtained by the government in this case is different than the information obtained by a public view of a particular location. This information "provides an all-encompassing record of the [cell phone] holder's whereabouts," *id.* at 2217, "beyond public thoroughfares and into private residences, doctor's

offices, political headquarters, and other potentially revealing locales." *Id.* at 2218; *see also United States v. Moore-Bush*, 963 F.3d 29, 42 (1st Cir. 2020). *Moore-Bush* went on to explain that the "*Carpenter* Court reasoned that CSLI creates 'otherwise unknowable' data and is as comprehensively invasive for law enforcement to use 'as if it had attached an ankle monitor to the phone's user.' *Id.*" at 42.

In *Riley v. California*, 134 S. Ct. 2473 (2014), the Supreme Court described the intense privacy interest in the contents of cell phones.

> First, a cell phone collects in one place many distinct types of information-an address, a note, a prescription, a bank statement, a video-that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

*Id.* at 2489. In *Riley*, when the Supreme Court required warrants for cell phone searches, see 134 S. Ct. at 2485, it did not do so as a mere formality, to be automatically granted in any case where probable cause for a crime was established. The constitutional requirement that there must be probable cause—meaning a fair probability—that particular evidence of a particular crime will be found on the phone, applies full force. In *Illinois v. Gates*, the Supreme Court stated that magistrates must determine based on the affidavit that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 239 (1983).

Because the toll records were obtained without a sufficient showing of probable cause, they were secured in violation of Mr. Villatoro's Fourth Amendment rights under *Carpenter*.

## IV.     Argument

The affidavit in support of the search warrant in this case failed to provide the judicial officer who reviewed the request for a search warrant with information sufficient to establish probable cause that a crime was committed by Mr. Villatoro or that evidence connecting Mr. Villatoro with criminal activity would be found on his phone. There were merely conclusory statements that "criminal actions reported by several monikers were matched to the monikers and/or code names in the cellular device," and that Mr. Villatoro was allegedly "given 'missions' to commit violent acts." Ex. A at *4. The evidence obtained by the Prince William County authorities and presented to the judicial officer in the affidavit in support of the search warrant failed to satisfy the standard of probable cause; this request for phone records was essentially a fishing expedition to find information tying Mr. Villatoro to criminal activity.

The affidavit failed to provide any particular information in the affidavit regarding the "criminal actions" that were associated with Mr. Villatoro, or even if any of these actions actually involved Mr. Villatoro. No specific information was provided as to what "moniker" was tied with what "criminal action" and which "cellular device" was used, if any, by Mr. Villatoro regarding any missions

The affidavit failed to state that Mr. Villatoro is a member of MS-13, nor does it say what clique of MS-13 he is allegedly associated with. There were no allegations of any crime that he had committed – merely that he was alleged to have been "given 'missions' to commit violent acts and other orders that must have been completed prior to August 30, 2019." Ex. A at *4.

A breakdown of the concerns with the information provided in the affidavit is instructive:

1. There was no specific information in the affidavit alleging that Mr. Villatoro had committed any crime, only that he had allegedly been "given 'missions' to commit violent acts;"

2. No information was provided in the affidavit as to who were the alleged victim(s) of Mr. Villatoro with respect to any violent acts allegedly attributed to him;

3. Both "Oculto" and "Serio" were alleged to have been "given missions" to commit violent acts, yet there is no distinction of reference as to what missions each was assigned, whether they were assigned jointly, or whether the missions were to be conducted independently by one or the other;

4. No dates were provided to establish when these missions were to have been performed;

5. No specifics were provided in the affidavit to establish if the information regarding the missions referenced came from the text messages from the cellular device seized from the "ranking member," or "the MS13 cliq ledger;" (Ex. A at *4.)

6. If the information came from the ledger, there is no indication regarding the provenance of the ledger, the date the entry was made, or the source of the entry;

7. If the information came from the text messages, no information was provided to indicate the actual identity of the source of the information nor that source's reliability or credibility; and

8. The phone numbers associated with Oculto were not sufficiently connected to Mr. Villatoro; there was merely a conclusory statement that the numbers "were attached to 'Oculto' aka O1." Ex. A at *4.

Regarding any connection between the phone numbers and unlawful activities, the affidavit states, generally, that MS-13 are broken up into small groups and that they commit an array of unlawful acts. Ex. A at *5. The affidavit further speaks to the importance of obtaining information about gang membership. *Id*. The affidavit then states, "[i]nformation related to crimes are discussed at the leadership levels of MS-13. It is likely that the evidence sought herein will be found in these ranking MS-13 member's and associate's cellular records." Nowhere in the affidavit is there an allegation that Mr. Villatoro, or "Oculto," is actually a member of MS-13. And there is certainly no indication as to which clique within MS-13 Mr. Villatoro allegedly is associated.

Without information in the affidavit tying Mr. Villatoro to specific criminal activity, and without allegations in the affidavit demonstrating that evidence of criminal activity will be found pursuant to the search of the listed phone numbers, probable cause is absent and the execution of the search warrant must be held to be unlawful.

The Court should also be mindful that the reliability of the information provided by law enforcement is subject to the Court's review. The only information in support of the allegations that "Oculto" was "given 'missions' to commit violent acts and other orders" were provided either in entries in a ledger, with no attribution of who wrote the entries, or in text messages from an unnamed "ranking member" of MS-13. Ex. A at *4.

When relying on the information from an unnamed source, that person's or source's "reliability is 'key' to a magistrate's probable cause analysis when the search warrant application contains information provided by an informant." *United States v. Lull*, 824 F.3d 109, 116 (4th Cir. 2016) (citing *United States v. Wilhelm*, 80 F.3d 116, 119 (4th Cir. 1996)). Resolving questions about a source's reliability requires an assessment of the totality of the circumstances

with a particular focus on "the informant's 'veracity' or 'reliability' and his or her 'basis of knowledge.'" *Wilhelm*, 80 F.3d at 119 (*quoting Illinois v. Gates*, 462 U.S. 213, 233 (1983)). Another important consideration is whether officers have been able to corroborate the source's information. *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004).

An affiant can establish the informant's reliability by noting that the source had provided reliable information in the past. *United States v. Bynum*, 293 F.3d 192, 197 (4th Cir. 2002) ("[T]he officer relied not on an unknown informant but one whom he knew and who had provided reliable information in the past that the law enforcement officers had 'verified.'"); *United States v. Chavez*, 902 F.2d 259, 264 (4th Cir. 1990) (finding that an informant's reliability may be established by showing that the informant previously gave tips which have proved to be correct or that the information given has been corroborated). In this application, there has been no identifying information about the source, and no specific information provided in support of the source's veracity or reliability; the Court must look to the four corners of the affidavit, and only the four corners of the affidavit, to determine whether probable cause has been established.

The government has failed to establish probable cause on the basis of information in the entry or entries in a ledger – entries which were not provided in the affidavit itself - or from text messages which also did not include the actual messages which were the alleged source of the representations made in the affidavit. There is simply insufficient information in the affidavit regarding the source of the allegations of criminal activity by Mr. Villatoro.

Interestingly, the standard for reasonable articulable suspicion, a far lower standard of proof relating to intrusions under the Fourth Amendment, requires a finding of objective, specific and articulable facts sufficient to justify the corresponding intrusion. *See Terry v. Ohio*, 392 U.S.

1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[1] Probable cause is required to justify the type of intrusion called for in this case, a search warrant, and that burden on the government is far higher than reasonable articulable suspicion. Under the four corners of the affidavit in this case, the government has failed to even establish that there were objective, articulable facts of any unlawful activity engaged in by Mr. Villatoro. Consequently, the government could not even meet the level of proof of reasonable articulable suspicion under the affidavit in this case.

### V.    The Good Faith Exception

The good faith exception is a well-established exception to the warrant requirement. *United States v. Leon*, 468 U.S. 897, 919-22 (1984). Under the exception, suppression of evidence obtained from a subsequently invalidated search warrant is appropriate only when "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. at 922 n.23. Generally, evidence will only be suppressed if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id*. at 926. However, there are four circumstances where the good faith exception will not apply. Specifically, the good faith exception is inapplicable when:

(1) "the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";

---

[1] *See also Ornelas v. United States*, 517 U.S. 690, 696 (1996) (describing reasonable suspicion as "'a particularized and objective basis' for suspecting the person is engaged in criminal activity"). It "is demonstrated when an officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity." *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2011).

(2) the magistrate acted as a rubber stamp for the officers and so "wholly abandoned" his detached and neutral "judicial role";

(3) "an affidavit [is] so lacking in probable cause as to render official belief in its existence entirely unreasonable"; or

(4) "a warrant [is] so facially deficient- i.e., in failing to particularize the place to be searched or the things to be seized- that the executing officers cannot reasonably presume it to be valid." *Id.*

"Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (*quoting Leon*, 468 U.S. at 926). In this case, there can be no objectively reasonable belief, based on the information presented in the application for the search warrant, that there was probable cause that evidence of unlawful conduct would be found under the cell phone numbers submitted.

Outside of the vague and uncorroborated information about Mr. Villatoro in the affidavit, there was no evidence or information that any criminal activity was ongoing, or what particular criminal activity was alleged – or even when the criminal activity occurred. The Prince William County authorities could not have "harbored an objectively reasonable belief in the existence of probable cause." Consequently, any evidence that the government intends to introduce at the trial of this matter that was seized pursuant to, or derived from, the search warrant at issue, must be suppressed.

## VI.     Conclusion

Because the requests for phone records by the Prince William County authorities were made without a showing of probable cause, this Court should find that they were unlawful; all records produced pursuant to the issuance of the search warrant and the fruits of those records should be suppressed in the trial of this matter. Any derivative use of the records should also be prohibited.

Mr. Villatoro asks that a hearing be conducted to more fully address the issues raised and to answer any questions posed by the Court.

Respectfully submitted,
**Carlos Jose Turcios Villatoro**

By:          /s/
Robert J. Wagner
Va. Bar No. 27493
Robert J. Wagner, PLC
Counsel for Mr. Villatoro
101 Shockoe Slip, Suite J
Richmond, VA 23219
(804) 814-8172
robwagnerlaw@gmail.com

Elizabeth L. Van Pelt
Va. Bar No. 82750
Delaware Bar No. 6117
District of Columbia Bar No. 1615865
libbey@libbeyvanpeltlaw.com
LIBBEY VAN PELT LAW, PLLC
3033 Wilson Boulevard, Suite 307
Arlington, VA 22201
(571) 356-9096

## **CERTIFICATE OF SERVICE**

I certify that on April 21, 2023, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which sends a notification of filing (NEF) to all counsel of

record.

_____/s/_____

Robert J. Wagner
Va. Bar No. 27493
Robert J. Wagner, PLC
Counsel for Mr. Villatoro
101 Shockoe Slip, Suite J
Richmond, VA 23219
(804) 814-8172
(804) 494-5620 (fax)
robwagnerlaw@gmail.com
