IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:21-CR-260 |
| CARLOS JOSE TURCIOS VILLATORO, | Hon. Leonie M. Brinkema |
| *Defendant.* | Trial Date: September 11, 2023 |
| | Motions Hearing Date: May 23, 2023 |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS T-MOBILE EVIDENCE**

Defendant Carlos Jose Turcios Villatoro ("Villatoro") has moved this Court to suppress records provided by T-Mobile pursuant to a search warrant issued by a Prince William County Circuit Court Judge on September 10, 2019 (hereinafter, "the T-Mobile Search Warrant"). ECF 215. Villatoro contends that the T-Mobile Search Warrant was not supported by probable cause and, therefore, should not have issued. He further argues that the good faith exception should not apply because the affidavit supporting the warrant was so barebones and obviously devoid of probable cause that the police could not have reasonably relied on it – despite having a Circuit Court judge tell them otherwise.

**RELEVANT BACKGROUND**

On September 10, 2019, Detective Darien Cupka of the Prince William County Police Department sought and obtained a search warrant from a Prince William County Circuit Court Judge authorizing the search and seizure of records tied to three phone numbers serviced by T-Mobile. In the affidavit supporting his request for the T-Mobile Search Warrant, appended hereto as Exhibit 1, Detective Cupka explained that he was investigating the murders of two men, M.B.L.

1

and J.G.M., who had been found dead with obvious trauma to their bodies in a wooded area behind a convenience store in Woodbridge. Ex. 1 at 7-8. Detective Cupka explained that when investigators began learning more about M.B.L., they discovered that he had a number of disputes in the days leading up to his death and had apparently declined a request to fraudulently obtain motor vehicle registrations for members of the MS-13 gang. *Id.* at 8-9. Detective Cupka further advised that a search of M.B.L.'s cellular phone revealed that he was in frequent communication with phone numbers of interest in an MS-13 investigation being conducted by another law enforcement agency. *Id.* at 9.

Detective Cupka proceeded to explain that, despite these apparent MS-13 ties, M.B.L. was reported to have been a member of MS-13's sworn rival, the 18th Street Gang, and that members of each gang have standing orders to kill identified members of the other. *Id.* at 9. According to the affidavit, M.B.L. had apparently been seen by others throwing 18th Street hand signs and openly representing his 18th Street affiliation in establishments frequented by MS-13 members and associates, and a search of M.B.L.'s cellular phone and social media accounts corroborated his association with that gang. *Id.* To make matters worse, M.B.L. was also reported to have been selling narcotics, which – according to Detective Cupka – would have further put him on drug-dealing MS-13 members' radar and marked him for death. *Id.* at 9-10.

The affidavit noted that a possible lead was developed on September 2, 2019, when federal agents arrested a ranking MS-13 member who was in possession of a ledger and a cellular telephone. *Id.* at 10. Detective Cupka explained that the ledger contained the gang monikers, ranks, and reports of actions taken by members of an MS-13 clique and that investigators matched monikers in the ledger to monikers or "code names" in the member's phone. *Id.* He stated that a number with a 240-area code was paired with the moniker "Serio," a/k/a "S1," and that a 202

number and a 302 number were both attached to the moniker "Oculto," a/k/a "O1." *Id.* Detective Cupka advised that, according to the ledger and/or messages recovered from the arrested individual's cellular device, Serio and Oculto had been "given 'missions' to commit violent acts and other orders that must have been completed prior to August 30, 2019." *Id.*

Detective Cupka provided the judge with additional information about MS-13's structure, murder-approval process, and how MS-13 members and associates discuss and report criminal activity up the chain of command using telephones. *Id.* at 9-12. He proceeded to explain how and why the records he sought from T-Mobile could potentially aid the investigation, informing the judge that the records could help law enforcement identify who was using those numbers, other parties with whom they communicated, and the whereabouts of the user's cellular device at the time M.B.L. and J.G.M. were killed and where law enforcement may be able to find them. *Id.* at 11-12.

## ARGUMENT

Villatoro argues that the T-Mobile Search Warrant was unsupported by probable cause and that the exclusion of evidence obtained pursuant to its execution is the requisite remedy because no officer could have reasonably relied on the issuing judge's probable cause determination. These arguments fail. The T-Mobile Search Warrant was, contrary to Villatoro's contention, predicated on probable cause and, even if this Court retrospectively finds otherwise, the fruits of that warrant are not excludable because the warrant was executed in good faith.

**I.    PROBABLE CAUSE SUPPORTED THE T-MOBILE SEARCH WARRANT**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is a "fluid concept—

turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). In the context of a search warrant, probable cause has been said to exist "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Whether such a fair probability—not certainty or even a preponderance of the evidence—exists turns upon the totality of the circumstances, including "reasonable, commonsense inferences" that an issuing magistrate is entitled to draw. *United States v. Richardson*, 607 F.3d 357, 371 (4th Cir. 2010). Ultimately, probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Recognizing that reasonable minds may differ regarding whether a particular affidavit establishes probable cause, the Supreme Court has "concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969); *see also United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005); *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). The affidavit submitted in support of the search warrant application is presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). "When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996) (citing *Blackwood*, 913 F.2d at 142).

In attacking the T-Mobile Search Warrant, Villatoro does not allege overbreadth, staleness, or a failure to describe with particularity the things to be searched and seized. Nor does he argue that probable cause to believe that violations of the Virginia Code had occurred was lacking. Instead, Villatoro attacks the affidavit supporting the T-Mobile Search Warrant on two fronts, namely: (1) the affidavit "failed to set forth facts sufficient to establish probable cause that Mr. Villatoro had committed an offense;" and (2) the affidavit "failed to draw any connection between the alleged offense Mr. Villatoro had committed and the records that were requested." ECF 215 at 1. In other words, Villatoro decries a lack of nexus between him and the records and lack of a nexus between the records and the crimes under investigation. Unfortunately for Villatoro, the Fourth Amendment does not demand the former type of nexus, and the latter is clearly established in the affidavit.

"In determining whether a search warrant is supported by probable cause," the Fourth Circuit has stated, "the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.3d 1578, 1582 (4th Cir. 1993). Information must also be provided that links the criminal activity under investigation to the place or thing to be searched. *Id.* at 1583. The T-Mobile Search Warrant satisfied both requirements. First, the facts and circumstances articulated in the affidavit indicated that T-Mobile possessed the records sought. The United States concedes that Villatoro's name – at least his legal name – does not make an appearance in the affidavit. This fact is of no consequence, however, because the affidavit need not draw a line between the records and Villatoro specifically. As the Court well knows, investigators often seek phone records because they have identified numbers of interest in an investigation but do not know to whom those numbers belong. Such records can and often do help

5

investigators determine who their targets are in the first place.  Ascertaining the perpetrator of a crime's identity is obviously a critical, and oftentimes difficult, task aided by search warrants and other legal process compelling the production of subscriber information and other data from phone carriers and internet service providers.

Second, there was a sufficiently substantial basis for the Prince William County Circuit Court judge's probable cause finding.  While Villatoro characterizes the supporting affidavit as "bare bones," *see* ECF 215 at 1, a review of the six-page document reveals it to be anything but.  The affidavit, submitted by a detective with 24 years of experience as a police officer, provides insight into how MS-13's activities qualify it as a "criminal street gang" as defined by Virginia Code § 18.2-46.1 and tells the story of a man found dead in the woods who had apparently publicly flaunted his ties to MS-13's chief rival and sold drugs on MS-13's turf.  The same man was said to have had dealings with MS-13 members or associates in the days leading up to his slaying in late June 2019.  Later that same summer, an MS-13 member was found to be in possession of materials, consisting of written reports and digital messages, indicating that two MS-13 members were to have committed violent acts before the end of August.  The identities of these two individuals were unknown to law enforcement, but the affidavit explained that investigators had identified phone numbers suspected to belong to these two individuals because of the manner in which they saved in a cellular device seized and searched pursuant to lawful process.  The affidavit also provided the judge with information about how and why the requested records were likely to contain information that could further the investigation.

The affidavit established probable cause to believe that crimes had been committed, that those crimes were committed by MS-13 gang members, that two of those gang members had been ordered to commit violent crimes that summer and were suspected to have utilized the phone

numbers for which the police were seeking records,[1] that gang members use cellular telephones to communicate with one another about their criminal activities, that telephone records can help identify perpetrators and co-conspirators in a violent crime investigation, and that historical cell site data can provide law enforcement with a cell phone's location "with an estimated distance from cell towers at the time of [a] homicide" as well as its present location. *See* Ex. 1 at 11. Altogether, and particularly in light of the immense deference owed to an issuing judge's determination of probable cause to support a search warrant, this is enough for the Court to find that probable cause supported the T-Mobile Search Warrant.

II. **LAW ENFORCEMENT'S RELIANCE ON THE T-MOBILE SEARCH WARRANT WAS IN ANY EVENT OBJECTIVELY REASONABLE**

Even if the Court finds that the T-Mobile Search Warrant was not supported by probable cause, that "does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009). Under the good faith exception to the Fourth Amendment's exclusionary rule, suppression is not warranted when officers rely in good faith on an objectively reasonable search warrant issued by a neutral and detached judge. *Leon*, 468 U.S. at 900. That is because "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921. This objective standard is measured by "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922, n. 23. "[A] warrant issued in good faith

---

[1] When it comes to the ledger and phone messages discovered following the September 2019 arrest of an MS-13 member, Villatoro seems to say that the issuing judge should have treated the unknown author(s) as confidential informants and demanded that Detective Cupka vouch for the reliability of their statements. *See* ECF 215 at 9-11 (citing *United States v. Lull*, 824 F.3d 109, 116 (4th Cir. 2016). Such individuals are obviously not law enforcement sources, and Detective Cupka need not have made any assurances regarding the veracity of physical evidence or co-conspirator statements contained therein. The affidavit provided the issuing judge with adequate context of the evidence.

7

by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* at 922 (internal quotation marks omitted). The threshold for overcoming this good-faith presumption is a "high one." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012); *see also United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019) ("Overcoming the presumption of good faith is no small feat, as an officer cannot ordinarily be expected to question a judge's probable cause determination.").

In *Leon*, the Supreme Court observed that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918. The Court identified only four circumstances in which exclusion of evidence seized pursuant to a warrant is appropriate. Those are when: (1) the issuing magistrate was misled by the inclusion of knowing or recklessly false information; (2) the issuing magistrate wholly abandoned the detached and neutral judicial role; (3) the warrant is facially deficient as to its description of the place to be searched or the things to be seized; or (4) the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely on it in good faith." *Id.* at 923-24. None apply here.

Here, the warrant contained no knowingly or recklessly false information (or omission), let alone anything of that sort material to the issue of probable cause. Nor does the defendant allege that the issuing Circuit Court judge abandoned his judicial role. The warrant clearly and particularly described the information to be searched and what law enforcement would be seizing, and the affidavit made a comprehensive showing of probable cause to issue the warrant. Absent any of these errors, once the judge signed the warrant, the officers' reliance on that authority was objectively reasonable. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984) ("[W]e

refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."). Ultimately, the Prince William County Police Department acted reasonably in relying on the Circuit Court's authorization of the warrant, and so the evidence seized pursuant to it should not be suppressed.

## CONCLUSION

Wherefore, for the foregoing reasons, Villatoro's Motion to Suppress T-Mobile Records should be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
John C. Blanchard
Maureen C. Cain
Megan C. Braun
Assistant United States Attorneys

Matthew K. Hoff
Department of Justice Trial Attorney
Organized Crime and Gang Section

9

## **CERTIFICATE OF SERVICE**

I certify that on May 5, 2023, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

By: _____/s/_____
John C. Blanchard
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3999
Fax:   (703) 299-3980
John.Blanchard@usdoj.gov